## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

SIBYL A. SATTERWHITE,                      :

     Plaintiff,                          :
                               Case No. 3:14cv00141

 vs.                                       :
                               District Judge Thomas M. Rose
CAROLYN W. COLVIN,                         :   Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,                   :

     Defendant.                          :

## REPORT AND RECOMMENDATIONS[1]

### I.    Introduction and Procedural History

     Plaintiff Sibyl Satterwhite brings this case under 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income. Plaintiff protectively filed her application on November 21, 2006, alleging disability since that day. She claims to be disabled by reason of head and musculoskeletal injuries; bi-polar disorder; chronic pain; arthritis; memory loss; and depression. After her application was denied during the initial administrative proceedings, Plaintiff was provided a hearing before Administrative Law Judge (ALJ) Thaddeus J. Armstead, Sr. On October 23, 2009, ALJ Armstead issued a decision concluding that Plaintiff was not under a "disability" within the meaning of the Social

_____

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Security Act, and was therefore not eligible for SSI.  (*PageID##* 43-59).  The Appeals

Counsel denied Plaintiff's request for review, and ALJ Armstead's decision became the

Commissioner's final decision.

In a previously filed case, Plaintiff challenged ALJ Armstead's decision and

obtained an Order remanding the matter for further administrative proceedings.

*Satterwhite v. Comm'r of Soc. Sec.*, No. 3:11cv99; *see PageID##* 693-712.  On remand,

the Social Security Administration's Appeals Council vacated ALJ Armstead's decision

and remanded the matter for further proceedings.  Those proceedings involved a hearing

before ALJ Amelia G. Lombardo, who subsequently found that Plaintiff was not disabled.

(*PageID##* 580-95).  Plaintiff presently challenges ALJ Lombardo's non-disability

decision.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the

Commissioner's Memorandum in Opposition (Doc. #14), Plaintiff's Reply (Doc. #17),

the administrative record (Docs. ## 6 and 7), and the record as a whole.

Plaintiff seeks an Order granting her benefits rather than remanding the matter for

further administrative proceedings.  The Commissioner seeks an Order affirming ALJ

Lombardo's non-disability decision.

## II.    **Plaintiff's Two Administrative Hearings**

Plaintiff was considered a "younger" person under Social Security regulations (she

was 43 years old) at the time she filed her application for benefits.  20 C.F.R. §

416.963(c).  Her age category subsequently changed to a person "closely approaching

advanced age" under the regulations.  20 C.F.R. § 416.963(d).  Plaintiff earned a high

school education through a GED.  She has no past relevant work experience.

Plaintiff testified at an administrative hearing held in September 2009 and

September 2013.  (*PageID##* 603-68).  A summary of her relevant testimony, as well as

the testimony of medical expert Dr. Manders, is provided below.

### A.     Plaintiff's September 2009 Testimony

Plaintiff testified she has a driver's license and drives with her mother.  (*PageID#*

609).  She stated she was convicted of carrying a weapon while on disability and spent

time in prison in 1988 for a probation violation.  (*PageID#* 610).  She also spent 6 months

in jail in 1998 after she pled no-contest to a first-degree misdemeanor for vehicular

homicide.  (*PageID#* 611).

Plaintiff testified she believes she has been disabled since November 2006.

(*PageID#* 612).  She claims she has chronic back pain, bipolar disorder, post traumatic

stress disorder, and problems with her memory.  (*PageID#* 613).  She indicated her

primary doctor prescribes her Vicodin, Flexeril, and Elavil.  (*PageID#* 615).  The

medications help "a little bit," and do not have any side effects.  (*Id.*).

Plaintiff stated she could lift a gallon of milk without any problems.  (*PageID#*

616).  She believes she can stand for 1 to 1 ½ hours, without her back starting to bother

her.  She believes she can walk for approximately 5 minutes without back trouble.  She

indicated she can sit for approximately 1 to 2 hours without her back being irritated.

(*Id.*).

Plaintiff lives with her parents and two nephews. (*PageID#* 609). She does not do any cooking or laundry, but tries to help her mother about once or twice a month with vacuuming. (*PageID#* 617). She does not have any hobbies and indicated she only has one friend that she visits approximately once a month. (*PageID#* 618). Approximately 3 times per month someone may come to visit her.

Plaintiff typically watches television throughout the day and has trouble sleeping. (*PageID#* 619). She indicated at the hearing she had not used drugs for 4 years. She stated she sometimes hears voices, about 4 times per week. She stated the voices have decreased in frequency since she stopped using illegal drugs, but are still happening. (*PageID#* 620).

### B.    Plaintiff's September 2013 Testimony

Plaintiff testified she has a driver's license, but only drives "sometimes." (*PageID#* 648). She indicated that, after the car accident in 1998, she worked as a telemarketer in 2002 for "some months." (*Id.*).

Plaintiff testified her back hurts after she stands for 1 hour. (*PageID#* 649). She has a hard time sleeping at night; she estimated that she gets up approximately 6 times a night due to back pain. (*Id.*). She "sometimes" naps during the day. (*PageID##* 656-57). She can walk for about a block at a time, but then she gets tired. (*PageID#* 651). Sitting is also uncomfortable. When she is at home, she sits from 10 to 20 minutes, then gets up. She was unable to stay seated throughout her hearing. Plaintiff explained that carrying a gallon of milk from the car to the refrigerator hurts her back. (*PageID#* 652). She

4

vacuums, cleans the dishes, and heats up tv dinners. (*PageID#* 655). About four days out of the week she will stay in bed. (*PageID#* 657). When her back pain flares, she avoids doing household chores. (*PageID#* 658).

As to her mental impairments, Plaintiff testified that she hears female voices about 3 times per month telling her to kill herself. (*PageID##* 649-50). She explained that post traumatic stress disorder causes her to feel like people are trying to get her. (*PageID#* 653). Anxiety causes her to be nervous when she is around others. Depression will keep her from getting out of bed in the morning: "[s]ometimes [she] just feel suicidal." *Id*.

Plaintiff stays at her mother's house so there is someone around to make sure she does not harm herself or skip her medications. (*PageID#* 654). She stated she tries to wake up by 2:00 p.m. each day, but indicated, "I don't really do nothing." (*PageID#* 656). She explained, "I don't want to be bothered with nobody . . . ., And I just stay in my room. I don't go out, I don't do anything." (*PageID#* 657).

### C.  **Medical Expert Testimony**

Dr. Carl Manders, a neurologist, testified as a medical expert at the hearing in September 2013. He discussed Plaintiff's head injuries stemming from the 1998 car accident.

Dr. Manders testified that Plaintiff had a closed head injury, "which meant that there was no exposure of the brain or laceration of the skull." (*PageID#* 636). He indicated it was similar to "a severe concussion." (*Id.*).

Dr. Manders also testified Plaintiff had a transverse process fracture of the lower

5

lumbar vertebrae, which "are little pieces of bone that come off the side of the vertebrae, and they have no real neurological consequence.  They are painful but they don't have any real support system other than some small muscles."  (*Id.*).

Plaintiff also had multiple rib fractures, left clavicle fracture, and another transverse process fracture in the cervical region at C7.  X-rays revealed arthritis in Plaintiff's neck and back but no "significant cranial, intracranial trauma as far as any residual."  (*Id.*).

Dr. Manders indicated that while Plaintiff has had a lot of headaches since the accident, "her neurological evaluations have been normal."  (*PageID#* 637).

Dr. Manders opined:

> As far as the head injury is concerned all the neurological examinations subsequently have been normal.  They show no evidence of persistent brain damage although she has at one time complained of some memory loss. . . . Neuropsych evaluations were done to check on the memory problem.  She's had difficulty in concentration which at times has been marked but they feel this is a psychological problem rather than a cerebral problem.

(*PageID#* 637).  Dr. Manders also noted that the trauma to Plaintiff's spine, although painful, "did not result in any neurological deficit."  (*PageID#* 638).  Dr. Manders went on further, as follows:

> All of her subsequent neurological examinations through the years have been normal.  But she's [sic] a significant psychological or psychiatric problems and has been treated through a number of years for a [sic] psychological problems, depression, irritability, things of that nature.
>
> She complains of pain in the neck and back.  On examination she had some limitations in range of motion of the cervical spine, and some tenderness in the lumber spine.  However you have to remember that anybody at her age would have

arthritis and that is not found to be neurologically important at least from the examining physician.

Time and time again, 17F, no neurological deficits. There has been 30F, there's a note that she was suicidal. And 31F, she complained of back and neck pain and there was no neurological deficit. It's mostly of the chronic pain syndrom which is probably significantly aggravated by psychological factors.

*Id.* When asked by the ALJ if he was able to formulate a residual functional capacity for Plaintiff, Dr. Manders indicated that "from a functional standpoint and review of the activities, she could sit six out of eight hours but at the end of each hour at the workplace, she would have to have the ability to stand and stretch for a few minutes, up to five minutes." (*PageID#* 639). Dr. Manders indicated, "we don't want her to sit for six hours straight. But at the end of each she could stand up at the workplace, stretch and change her position or posture. And she could do that sitting for six out of eight hours. She can stand 30 minutes at a time as a – for a total of two out of eight hours." (*Id.*). Dr. Manders believed based only on Plaintiff's subjective complaints, she could walk 20 minutes out of each hour for at least two hours out of eight. He believed she could crouch, squat, stoop, and reach occasionally; should try to avoid kneeling or crawling; and could lift and carry 10 pounds frequently. (*PageID#* 641). He found no limitation with her ability to use her hands.

## D. **Medical Evidence**

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire

7

administrative record and because the ALJ and the parties summarized the relevant records concerning Plaintiff's physical and mental conditions with citations to specific evidence.

III.  **"Disability" Defined and the ALJ's Decision**

The Social Security Administration provides SSI to indigent individuals, subject to several eligibility requirements.  Chief among these, for purposes of this case, is the "disability" requirement.  To receive SSI, an applicant must be a "disabled individual." 42 U.S.C. §1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.  42 U.S.C. §1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70. An SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ Lombardo applied the Social Security Administration's 5-Step sequential evaluation procedure.  *See* 20 C.F.R. § 404.1520(a)(4).  Steps 2, 3, and 4 are the most significant in this case.

At Step 2 of the sequential evaluation, ALJ Lombardo concluded that Plaintiff has the severe impairments of the residuals of trauma from remote motor vehicle accident; degenerative disk disease of the cervical spine; degenerative disk disease of the

lumbosacral spine; chronic obstructive pulmonary disease; affective disorder; anxiety disorder; and personality disorder with history of polysubstance abuse. (*PageID#* 585).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that meets or equals one of the Listings, including sections 1.04, 3.02, 12.04, 12.06, 12.08, and 12.09.[2] (*PageID##* 587-89).

At Step 4, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and found that Plaintiff could:

> perform light work as defined in 20 CFR 416.967(b), with the following limitations: (1) no more than occasional stooping, crouching, kneeling, and crawling; (2) the opportunity for a one-to-two minute shift between sitting and standing every thirty minutes; (3) simple, repetitive tasks that are low stress, which in this case is defined as no assembly line production quotas, no fast paced work, occasional contact with supervisors and co-workers, and no contact with the public.

(*PageID#* 589). The ALJ also concluded at Step 4 that Plaintiff's "allegations and subjective complaints lack credibility to the extent that they purport to describe a condition of disability for Social Security purposes." (*PageID#* 594).

The sum and substance of the ALJ's sequential evaluation ultimately led her to conclude that Plaintiff was not under a benefits-qualifying disability. (*PageID#* 595).

## IV.   <u>Judicial Review</u>

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ

---

[2] The Listing of Impairments are found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

[3] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

10

546-47 (6th Cir. 2004)).

**V.**    **Discussion**

    **A.**    **Dr. Knight's Opinion**

Plaintiff first argues the ALJ erred by failing to properly apply the treating

physician rule to the opinions of her treating psychiatrist, Dr. Shirlann Knight, M.D.

(Docs. ## 10 and 17).  The Commissioner contends that the ALJ properly assigned little

weight to Dr. Knight's opinions.  (Doc. #14, *PageID#* 1385).

Plaintiff began receiving mental health treatment at Daymont Behavioral Health in

June 2006.  (*PageID##* 426-37).  Dr. Knight began treating her in March 2007.

(*PageID##* 408-12).

In August 2007, Dr. Knight completed a mental status questionnaire for the Ohio

Bureau of Disability Determination (BDD).  (*PageID##* 379-81).  Dr. Knight noted

Plaintiff's mood and affect were blunted and depressed.  Dr. Knight indicated Plaintiff

has a history of polysubstance dependence, including crack cocaine, heroin, and cannabis,

but has not used drugs since August 2006.  She noted Plaintiff's drug-related legal

troubles, as well as her conviction for negligent homicide.  (*PageID#* 379).   Dr. Knight

diagnosed Plaintiff with schizoaffective disorder and polysubstance dependence, in

remission.  (*Id.*).  Dr. Knight opined Plaintiff may lose concentration and focus in a work

setting and have trouble with work pressures.

In May 2009, Dr. Knight opined that Plaintiff did not have the ability to perform

any of the listed work-related functions, such as sustaining attention and concentration at

work to meet normal standards of work productivity and work accuracy; understanding, remembering, and carrying out simple work instructions without requiring very close supervision; behaving in an emotionally stable manner; and completing a normal workday and workweek without interruption from her impairments.  (*PageID##* 529-37).  Dr. Knight believed that Plaintiff had marked difficulties in maintaining social functioning and with her concentration, persistence, or pace.  (*Id.*).  Dr. Knight believed Plaintiff's former substance abuse was not a material factor to her mental impairments.  (*PageID#* 531).

Social Security regulations require ALJs to give the opinion of a treating physician controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 416.927(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).  "Even if [a] treating physician's opinion is not given controlling weight, there remains a presumption, albeit a rebuttable one, that the opinion…is entitled to great deference."  *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (internal quotations and citations omitted).  If the treating source's opinions are not entitled to controlling weight, ALJs must continue to weigh their opinions under certain factors, including the length of the treatment relationship, frequency of examination, the treater's specialization, supportability of the opinion, and consistency of the opinion with the record as a whole.  20 C.F.R. §§ 416.927(c)(1)-(6); *see Bowen*, 478 F.3d at 747.

ALJs are further required to provide "good reasons" for discounting the weight

given to a treating source opinion.  20 C.F.R. § 416.927(c)(2).  These reasons must be
"supported by the evidence in the case record, and must be sufficiently specific to make
clear to any subsequent reviewers the weight the adjudicator gave to the treating source's
medical opinion and the reasons for that weight."  SSR 96-2p, 1996 SSR LEXIS 9, at
*11-12, 1996 WL 374188, at *5 (July 2, 1996).  This procedural requirement "ensures
that the ALJ applies the treating physician rule and permits meaningful review of the
ALJ's application of the rule."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th
Cir. 2004).

In this case, the ALJ provided Dr. Knight's opinion with "little weight," finding as
follows:

> In response to interrogatories from the claimant's attorney, Dr. Knight reported
> that the claimant's mental impairments were of Listing level severity.  The record
> simply does not support this conclusion, as discussed above.  The mental health
> treatment notes indicated an improvement in her symptoms when she was
> compliant with her medications (Exhibits 19F, page 7 and 35F, page 101).  The
> claimant has only required three brief psychiatric hospitalizations, both in or after
> 2009, even though she had been receiving treatment since 2006.  In that regard, it
> is noted that the claimant's first psychiatric hospitalization did not occur until one
> month after the prior hearing decision was issued, which denied her application for
> supplemental security income.  The other two were both in early 2010 and one, the
> claimant admitted, was a gesture.  As the psychiatrist's opinion is also inconsistent
> with the overall record, Dr. Knight's opinion is also entitled to little weight.

(*PageID#* 590).  A review of the ALJ's opinion indicates she erred by failing to apply the
relevant factors set forth in 20 C.F.R. § 416.927 to Dr. Knight's opinion.  Even assuming
Dr. Knight's opinion was not entitled to controlling weight, "a finding that a treating
source medical opinion . . . is inconsistent with the other substantial evidence in the case

record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley*, 581 F.3d at 408 (quoting SSR 96-2p). Other than a boilerplate recitation of the regulation, the ALJ's opinion contains no substantive analysis weighing the opinions of the treating psychiatrist against those of the state agency, record-reviewing psychologists under the factors of 20 C.F.R. § 416.927 – including the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, and the supportability of the treating physicians' opinions. Without such analysis, the Court cannot say, for example, that the treating psychiatrist's opinions are "so patently deficient that the Commissioner could not possibly credit" them and therefore excuse the ALJ's failure in this case. *Wilson*, 378 F.3d at 547. Similarly, the ALJ's silence on the 20 C.F.R. § 416.927 factors "denotes a lack of substantial evidence," *see Blakley*, 581 F.3d at 407, and deprives the Court of its opportunity to consider whether the ALJ provided "good reasons" for giving less than controlling weight to their opinions. (*Id.* at 406-07).

For these reasons, Plaintiff's statement of errors is well taken.

**B.     Dr. Haskins's Opinion**

In the prior decision denying Plaintiff's application for SSI, the ALJ improperly relied upon the opinion of state agency reviewing consultant Dr. Kristen Haskins, Psy.D. This Court previously held the ALJ's deference to Dr. Haskins's opinion was unreasonable, finding as follows:

The Court is troubled with the ALJ's decision to defer to the non-disability

14

finding of Dr. Haskins, a non-examining, state consultative psychologist, who refused to consider most of Plaintiff's mental impairments on the erroneous assumption that she was convicted of a felony as a result of her car accident. Under Social Security regulations, the opinion of Plaintiff's treater, Dr. Knight, is presumptively "accorded the most deference" because of the "ongoing relationship between the patient and the opining physician." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). Dr. Haskins, on the other hand, is presumptively "afforded the least deference," as she is a "non-examining source, who provide[d] an opinion based solely on review of [Plaintiff's] existing medical records." *Id.*

(*PageID#* 705). This Court further noted that the ALJ "failed to mention that Dr. Haskins erroneously excluded Plaintiff's significant mental impairments in making her disability determination." (*PageID#* 706).

In the present opinion, the ALJ discussed Dr. Haskins's opinion as follows:

The record was also reviewed by State Agency psychologists, who concluded that from a mental standpoint, the claimant would be able to perform both simple, as well as some moderately complex tasks, in a relatively static work environment that would require only superficial contact with supervisors and co-workers, as well as no contact with the public (Exhibits 8F, page 4 and 12F). The opinion of the State Agency psychologists has been afforded some weight, but additional mental health treatment records received at the hearing level suggest the need for further restrictions (SSR 96-6p).

(*PageID#* 589). The Commissioner contends the ALJ was not relying on Dr. Haskins's opinion to assess Plaintiff's residual functional capacity, but "simply assigned some weight to Dr. Haskins's opinion because based on her review of all the evidence, she found Plaintiff had the limitations Dr. Haskins opined she had." (Doc. #14, *PageID#* 1389). The Commissioner contends the ALJ therefore did not commit the same error as previously because she "did not indicate that she was adopting Dr. Haskins's opinion or using it as a basis to reject Dr. Knight's opinion, Plaintiff's subjective complaints, or any

15

other evidence within the record." *Id.*  The Court finds such an argument unpersuasive.

> Social Security ALJs are not free to ignore Judicial Orders:
>
> In some Social Security cases, district courts will include detailed instructions concerning the scope of remand and the issues to be addressed.  In such cases, "[d]eviation from the court's remand order in subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 866, 109 S. Ct. 2248, 104 L.Ed.2d 941 (1989). *See also Mefford v. Gardner*, 383 F.3d 748, 758 (6th Cir. 1967) (noting "the general rule that, on the remand of a case after appeal, it is the duty of the lower court, or the agency from which the appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions.").  These cases stand for the proposition that the administrative law judge may not do anything expressly or impliedly in contradiction to the district court's remand order.  These cases do not preclude the ALJ from acting in ways that go beyond, but are not inconsistent with, the district court's opinion . . . .

*Hollins v. Massanari*, 49 Fed. App'x 533, 536 (6th Cir. 2002).  Regardless of what purpose the ALJ relied upon Dr. Haskins's opinion, the ALJ again used this deficient opinion as support for her opinion denying benefits in contradiction to this Court's remand order.  This is so even though the Court previously directed that the Commissioner should obtain a <u>new</u> opinion from Dr. Haskins that considered Plaintiff's mental impairments arising out of the car accident in 1998. (*PageID#* 707)(emphasis added).  The Commissioner's attempt to downplay the ALJ's usage of such a deficient opinion is not persuasive.  As Plaintiff aptly notes, the ALJ's "assignment of 'some weight' rather than complete deference to Dr. Haskins's opinions did not recuse her from her responsibility to reasonably follow this Court's 2012 Order and articulate a reasoned application of 20 C.F.R. § 404.1527."  (Doc. #17, *PageID#* 1404).

16

For these reasons, this portion of Plaintiff's Statement of Errors is also well taken.[4]

**VI.** **Remand is Warranted**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F3d at 746. Remand warranted by an ALJ's failure to follow the regulations arises, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-47 (6th Cir. 2004); failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted where the evidence of disability is overwhelming or where the evidence of

---

[4] In light of this conclusion and the resulting need to remand this case, an in-depth analysis of Plaintiff's remaining challenges – including those regarding Dr. Manders's testimony, Dr. Kahn's opinion, and Plaintiff's credibility – is presently unwarranted.

disability is strong while contrary evidence is weak.  *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.  Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence four of §405(g) due to problems set forth above.  On remand, the ALJ should be directed to: (1) re-evaluate the record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Plaintiff was under a disability and thus eligible for SSI.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1.    The Commissioner's non-disability finding be vacated;

2.    No finding be made as to whether Plaintiff Sibyl A. Satterwhite was under a "disability" within the meaning of the Social Security Act;

3.    This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4.    The case be terminated on the docket of this Court.


July 24, 2015

s/Sharon L. Ovington
Sharon L. Ovington
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474  U.S. 140 (1985);  *United States v. Walters*, 638 F. 2d 947, 949-50 (6th Cir. 1981).